| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| ☑ SUMMONS | ☐ ALIAS - SUMMONS |

(2/18/11) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

No. 2016-L-063013

ALICE CATALANO;

v. (Name all parties)

MENARD, INC.

**Defendant Address:**
MENARD, INC.
CORPORATION SERVICE COMPANY
8040 EXCELSIOR DRIVE, SUITE 400
MADISON, WI 53717

**Summons**

To each Defendant: ☑ SUMMONS ☐ ALIAS - SUMMONS

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☐ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☑ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 15549
Name: YEARWOOD ELLEN A
Atty. for: ALICE CATALANO
Address: 636 S RIVER RD #104
City/State/Zip: DES PLAINES, IL 60016
Telephone: (847) 824-0358

WITNESS, Wednesday, 10 February 2016

/s DOROTHY BROWN
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code) (Facsimile Telephone Number)

/s DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS



EXHIBIT A

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the document(s) and taking appropriate action.

Please visit www.cscglobal.com for more information related to CSC's Litigation and Matter Management services, including MYSOP, online acknowledgement of SOP and to view a complete library of all SOP received on your behalf by CSC.

**CSC is SSAE 16 certified for its Litigation Management System.**

2711 Centerville Road  Wilmington, DE 19808
(888) 690-2882  |

2

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
CALENDAR: K
PAGE 1 of 10
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
3rd MUNICIPAL DISTRICT, LAW DIVISION

Alice Catalano, Plaintiff, )
v. ) No.
Menard, Inc., d/b/a Menards, Defendant )

## COMPLAINT FOR PERSONAL INJURY

Plaintiff Alice Catalano, by and through her attorney Ellen A. Yearwood of Yearwood and Associates, Ltd, in support of her Complaint for Personal Injury, states:

1. Plaintiff Catalano and her mother drove to the Menards store at 740 E. Rand Road, Mt Prospect IL 60056, on Oct. 4, 2015.

2. Catalano purchased 12 bags of lava rock at the building materials counter, paid cash, and was told by employee Charles L to drive to the side of Menards and through a service gate to the outdoor landscaping area where a Menards employee would load her vehicle with the lava rock. See Exhibit A, packing list to be used to pick up the lava rock.

3. Catalano followed the instructions. Inside the gated area a Menards security guard told her where the lava rock was located and directed her to drive there. She did.

4. Once at the lava rock location, Catalano found no lava rock and asked a Menards employee where it was. That employee said the store was sold out and directed Catalano back into the store to get a refund.

5. Catalano drove toward the gate out of the secured area, the security guard checked her vehicle to make sure there was nothing in it, and she was allowed to exit the gate.

6. Catalano returned to the building materials counter within the store and asked for her refund from Charles L. Charles apologized for selling items that were not in stock and discussed the matter with another employee, who appeared to be correcting Charles about how to avoid

selling items not in stock. Charles then explained he could not give a refund and the refund would have to be processed at the return counter.

7. Catalano went to the return counter, on the other side of the large store, waited in line for some time, and received a refund from Lizett. See exhibit B, refund receipt for 12 bags of lava rock, dated Oct. 4, 2015.

8. Catalano turned to exit the store through large, ceiling height, sliding doors. The doors hit Catalano on the left side of her body while she was trying to exit. The doors slammed into her left side and head. It was unclear why the sensors did not "see" Catalano and stop the doors from closing. Catalano was stunned and hurt very badly.

9. Catalano walked a few steps forward and could not see anything; her eyes did not work. She recalls some women asked if she were OK. She managed to walk to her car where her mother was waiting. Catalano told her mother she was hurt very badly and needed to go back to the store to report the injury.

10. Catalano returned to the store near the returns counter and asked to speak to a manager. She reported to the manager that she was just injured by the sliding doors, that she did not think the sensor sensed she was there, and that the door slammed into her left side. The (male) manager asked where she was hurt and Catalano told him the door hit her on her whole left side and that her arm and body were really hurting. Catalano pointed to Lizett and said she most likely saw the incident because she was right there and was taking care of her just before the incident. The manager declined to call Lizett over to inquire if she witnessed the injury. He asked if Catalano wanted an ambulance and Catalano declined, saying her mother would drive her for help. On information and belief, there were video cameras which captured the incident and should be preserved for inspection and trial.

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
PAGE 2 of 10

11. Catalano left the store dazed and confused and in pain. On the way home her head began hurting and she noticed swelling and a goose egg formed on the left side of her forehead. She felt nauseated, sore, and tired, but her head hurt so much she couldn't rest. Resting remained difficult the entire evening.

12. The next day Oct. 5, 2015, Catalano tried to work but could not concentrate and had difficulty communicating both verbally and in writing. She struggled through work all day and then went to the Lutheran General Hospital Emergency Room on Dempster Street in Park Ridge, Illinois.

13. At the Emergency Room on Oct. 5, 2015, Catalano was evaluated by a triage nurse and given a head CT scan. Catalano waited in the ER for a long time, the ER waiting room was overflowing with patients, but they were all waiting and not moving. Catalano advised the triage nurse she was leaving and would see her general physician Dr. Steven Wolfman, who was gone for the day.

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
PAGE 3 of 10

14. On Oct. 6, 2015, Catalano at 8 a.m. saw Dr. Visotsky at Illinois Bone and Joint Institute, 9000 Waukegan Rd, Morton Grove, Illinois. She was told he only treated arms and shoulders. Her left shoulder and arm were X-rayed and she was told she had no broken bones in them, only bruising. She told the doctor she had pain across her chest and back and a bump on her head. Visotsky advised her to see her general physician.

15. On Oct. 6, 2015, Catalano at 11 a.m. saw Dr. Olivia Forys, associate to Dr. Steven Wolfman, at 9301 W. Golf Rd, Suite 302, Des Plaines, IL 60016. She advised Catalano that Catalano had a concussion and asked her to return to Lutheran General for chest X-rays.

16. Catalano returned to Lutheran General on Oct. 6, 2015, and had chest X-rays. Her head and body were in pain and she was struggling. She reviewed the report of the triage nurse

and found errors in it, so she asked to amend the report. The nurse was extremely busy, but Catalano succeeded in getting the amendment made.

17. On Oct. 7, 2015, Dr. Forys called Catalano and advised Catalano that Catalano had no broken bones but required rest for the concussion and needed to have her eyes checked. Dr. Forys did not say how long Catalano should rest nor give any details on what, exactly, Catalano could do or not do.

18. On Oct. 10, 2015, Catalano saw eye doctor Breunig at Chicago Glaucoma Consultants at 2640 Patriot Blvd, Suite 100, Glenview IL 60026. Pressure was high in both her eyes and she was prescribed eye drops to reduce the pressure.

19. Catalano continued to work in October, 2015, but had difficulty with headaches and body aches. Her sleep was interrupted and she felt her head was like jello. She was wobbly and felt dizzy when she bent down. She had intermittent pain in her arm, back, and chest. Her balance was off and she could not bend down without her head hurting. Others would have taken the rest of the month off, but Catalano is a hard worker and thought she could do her work. She continued to work through the difficulties.

20. On Oct. 26, 2015, Catalano went for a massage to loosen her muscles. She felt it helped but her arm and back were sore to the touch.

21. On Oct. 27, 2015, Catalano left for a previously planned vacation.

22. On Oct. 29, 2015, Catalano had another massage to relax her muscles.

23. On Oct. 30, 2015, Catalano, an experienced and practiced bicyclist, was riding a bicycle. She felt dizzy, put her right foot down to stabilize herself, rolled her right ankle, and fell. She had to have an ambulance and a hospital visit. Her right ankle was sprained and her lower back had bad bruising. She was in extreme pain, could not walk, and needed a wheelchair

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
PAGE 4 of 10

and crutches to get around. The next day, Oct. 31, 2015, she returned from vacation.

24. Nov. 2 through Nov. 5, 2015, Catalano took sick leave from work totaling 32 hours due to the injuries from the bicycle accident caused by the dizziness from the sliding door incident.

25. Nov. 13, 2015, Catalano took 2 hours sick leave from work and saw Dr. Garapati at Illinois Bone and Joint Institute for her right ankle. She had x-rays and was referred for physical therapy two weeks later.

26. Nov. 25, 2015, Catalano went to physical therapy at Illinois Bone and Joint Institute, 900 Rand Road, Des Plaines IL 60016.

27. Dec. 1, 2015, Catalano met with Dr. Forys again, who advised Catalano to see a neurologist and a physical therapist for vestibular rehab. Dr. Forys advised Catalano that her equilibrium was off and that it was likely the result of the door injury disturbing the crystals in her ear bones.

28. Dec. 3, 2015, Catalano took ½ hour sick leave for another physical therapy appointment at Illinois Bone and Joint Institute.

29. Dec. 9, 2015, Catalano took 2 hours sick leave to see Dr. Pieroth, neurologist, 2400 Chestnut Ave, Glenview IL, to follow up on the concussion, a referral from Dr. Forys. Dr. Pieroth added cervical and concussion to the vestibular physical therapy prescribed by Dr. Forys.

30. Dec. 10, 2015, Catalano had physical therapy at IBJ. The therapist advised the 3rd toe on her right foot was weak and had no resistance and to mention that to Dr. Garapati.

31. Dec. 11, 2015, Catalano took 1.5 hours sick leave from work for a followup appointment with Dr. Garapati at IBJ. He advised to add more physical therapy sessions and consulted with Dr. Visotsky to add Catalano's left arm into physical therapy because there was

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
PAGE 5 of 10

pain and difficulty sleeping on her left side.

32. Dec. 14, 2015, Catalano had vestibular physical therapy at Optimum Physical Therapy, 9301 W. Golf Rd, Des Plaines IL 60018.

33. Dec. 17, 22, and 29, Catalano had physical therapy appointments at IBJ.

34. Jan. 2, 2016, Catalano's daughter was married. Catalano could not wear 3 inch heels. While traveling her ankle swelled frequently.

35. Jan. 6, 2016, Catalano went to physical therapy at IBJ. Technician Crystal said that two ribs were dislocated which was why there was so much chest pain. She performed physical therapy on the ribs. Catalano was very sore throughout that evening and the next day.

36. Jan. 11, 13, 18, 20, 25, and 27, 2016, Catalano had physical therapy appointments at IBJ. As of Jan. 18, the physical therapy was getting more aggressive and Catalano experienced pain frequently.

37. Jan. 28, 2016, Catalano at work attempted to access a secured area using the wrong badge. A co-worker explained to her she was using the wrong badge but she could not understand that; she was in a fog. She was asked to leave with her co-worker. Later that day her co-worker explained again that she was using the wrong badge and she understood.

38. Jan. 31, 2016, Catalano did a lot of walking at a shopping mall and on her return home was in a lot of pain.

39. Feb. 1, 3, 8, and 10, 2016, Catalano has scheduled physical therapy appointments at IBJ.

40. Catalano remains somewhat dizzy and remains in need of physical therapy for her injuries. However, her prognosis is for a full recovery.

41. Catalano's medical records stemming from her Oct. 4, 2015, injury, and the Oct. 30,

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
PAGE 6 of 10

2015, resulting injury, are voluminous. She has lost time from work, has incurred significant medical expenses, and has experienced pain and suffering which is ongoing though diminishing over time. Her damages are in excess of $50,000.00.

WHEREFORE, Plaintiff Catalano respectfully requests:

A. That this Court FIND that Catalano's injuries, pain, suffering, medical expenses, and lost time from work were proximately caused by the incident at Menards in Mt Prospect, Illinois, on Oct. 4, 2015.

B. That this Court FIND that Defendant is liable for Catalano's damages for medical expenses, lost time from work, pain, and suffering, and determine their exact amount.

C. That this Court award prejudgment interest on Catalano's damages in a reasonable amount.

D. That this Court enter Judgment against Defendant and in favor of Plaintiff in the amount of Catalano's damages plus prejudgment interest plus costs of suit, and

E. That this Court enter such other and further relief as it deems just and equitable.

ALICE CATALANO

By: Ellen A. Yearwood, Attorney

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
PAGE 7 of 10

## VERIFICATION BY CERTIFICATION

The undersigned, being fully aware of the penalties for perjury pursuant to Section 5/1-109 of the Illinois Code of Civil Procedure, certifies that she has read the allegations of the foregoing Complaint for Personal Injury and that they are all true and correct, except those made on information and belief and, as to those, that she believes them to be true and correct.

*Alice Catalano*
Alice Catalano

Yearwood and Associates, Ltd
636 S. River Rd, Suite 104
Des Plaines IL 60016
847-824-0358 ph, 847-824-6771 fax
yearwood_assoc@yahoo.com
Cook # 15549

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
PAGE 8 of 10

# MENARDS — PICKING LIST - GUEST COPY

STORE # 3131 MTPR  
740 E. RAND ROAD  
MOUNT PROSPECT, IL 60056  
PHONE: (847) 632-0291  
FAX: (847) 632-0378  

CASHIER - PRESS RECALL TRANS AND SCAN BARCODE ==>  
**MTPR 21068**

**CASHIER:**

PLEASE STAPLE RECEIPT HERE.

PAGE 1 OF 1

SOLD-BY: CHARLES L.  
DATE: 10/04/15

**GUEST NAME - ADDRESS - PHONE**  
Guest  
740 E Rand Rd  
Mount Prospect, IL  
60056-2563  
Ph: (847) 545-5555  
JOB DESC:

| QUANTITY | DESCRIPTION | | SKU NUMBER | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 12 BAG | RED LAVA ROCK | 1 CU.FT. BAG | 180-2016 | 6.76 | 81.12 |

ELECTRONICALLY FILED  
2/10/2016 1:39 PM  
2016-L-063013  
PAGE 9 of 10

**TO AVOID PRODUCT NOT BEING AVAILABLE ON A LATER DATE PLEASE PICK UP ALL MERCHANDISE TODAY. THANK YOU.**

This is a quote valid today. Upon payment this quote becomes a yard picking list subject to the terms and conditions below. Quantities listed above may exceed quantities available for immediate pick-up. Product is not held for a specific guest, but instead is available to the buying public on a first come, first serve basis. Please pickup all purchases made on this picking list immediately. Failure to pick up products on this picking list today will result in additional charge to you if, on the day of pick up, the retail price of the products are higher than on the day purchased. Menards liability to you is limited to refunding your original purchase price for any product not picked up.

**Guest Instructions:**
1. Take this picking list to a cashier to pay for the merchandise.
2. Enter the outside yard to pick up your merchandise. (All vehicles are subject to inspection.)
3. Load your merchandise. (Menards Team Members will gladly help you load your materials but cannot be held liable for damage to your vehicle.)
4. When exiting the yard, present this list to the Gate Guard. (The Gate Guard will record the items you are taking with you.)
5. Sign the Gate Guard's signature pad verifying you've received the merchandise.

**PRE-TAX TOTAL:** 81.12

Our insurance does not allow us to tie down or secure your load, trunk lid, etc. For your convenience, we supply twine, but you will have to decide whether or not your load is secure and if the twine supplied is strong enough. If you do not believe the twine will suffice, stronger material can be purchased inside the store.

**READ THE TERMS AND CONDITIONS CAREFULLY.** All refunds are subject to Menards' posted return policy. In consideration for Menards low prices you agree that if any merchandise purchased by you is defective, Menards will agree to exchange the merchandise or refund the purchase price based on the form of original payment. You agree that there shall be no other remedy available to you. If there is a warranty provided by the manufacturer, that warranty shall govern your rights and Menards shall be selling the product "AS IS." Oral statements do not constitute warranties, and are not a part of this contract. The guest agrees to inspect all merchandise prior to installing or using it. UNDER NO CIRCUMSTANCES SHALL MENARDS BE LIABLE FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES. MENARDS MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE MERCHANDISE. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its applicable Consumer or Commercial Arbitration Rules, and judgments on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The guest agrees to these terms and conditions through purchase of merchandise contained on this document.

**THIS IS NOT A RECEIPT**    **GATE GUARD - SCAN HERE ==>**



A

ELECTRONICALLY FILED
2/10/2016 1:39 PM
2016-L-063013
PAGE 10 of 10

Use Your
*BIG CARD*  *REBATE*

**MENARDS**

MENARDS - MOUNT PROS
740 E. RAND ROAD
MOUNT PROSPECT, IL
60056

If you have questions regarding the
charges on your receipt, please
email us at:
MTPRfrontend@menards.com



Merchandise Return

RED LAVA ROCK
1802015   12.00  @6.76           81.12-
ORIG STORE: 3131 9-8257 10/04/2015

TOTAL                            81.12-
TAX MOUNT PROSPECT-IL 9%          7.30-
TOTAL SALE                       88.42-
CASH                             88.42-
CHANGE                           88.42

TOTAL NUMBER OF ITEMS =    12

**NOW HIRING! APPLY WITHIN**

THANK YOU, YOUR CASHIER, Lizett

3015  60 9596    10/04/15  01:53PM 3131

B

SERVED PERSONAL SUBSTITUTE

AT 9:35AM THIS 17 DAY OF Feb 2016
AT THE City OF Madison
DAVID J. MAHONEY
BY _____
Deputy Sheriff