# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Alice Catalano, | ) |
|           Plaintiff, | ) No. 16 C 3367 |
| | ) Judge Virginia M. Kendall |
|     v. | ) |
| Menard Inc., d/b/a Menards | ) |
|           Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Alice Catalano, visited Defendant, Menard Inc.'s (d/b/a Menards) retail store located in Mount Prospect, Illinois, and on her way out of the store she was struck by the automatic sliding doors. She filed a Complaint in the Circuit Court of Cook County[1] and Menards removed the matter to this Court. Plaintiff then filed an Amended Complaint (Dkt. 15) alleging that Menards was liable for injury based on negligence (Count I), premises liability (Count II), and negligence based on *res ipsa loquitor* (Count III). Menards moves for summary judgment [73] on all three counts. For the following reasons, Menards' motion is granted.

**I.   Undisputed Material Facts**

Counsel for Plaintiff failed to respond to Menards' Statement of Facts in compliance with the Northern District of Illinois' Local Rule 56.1. Instead of filing a Response to Menards' Rule 56 statement, counsel filed "Plaintiff's Memorandum of Law In Support of Response to Motion For Summary Judgment," which included a "Summary of Facts." In the summary, Plaintiff's counsel only states that "Defendant adequately summarized the facts until the last paragraph of

---
[1] Case No. 16-063013

1

its Facts section."[2] Plaintiff also submitted a statement of additional facts—none of which create a material dispute.

In accordance with the rules, in opposing a summary judgment motion a party must provide:

> (3) a concise response to the movant's statement that shall contain:
>
>> (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
>>
>> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>>
>> (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Absent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

*See* LR 56.1(3). Plaintiff's counsel failed to follow this rule and failed to support any objections she may have had with documented evidence that the Court could review. Because district courts are entitled to enforce strict compliance with Rule 56.1, Plaintiff's statement of additional facts and her response to Menards's statement of facts will be disregarded and Menards' Statement of Facts is deemed admitted. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) (district court did not abuse its discretion when it struck responses to statement of facts that were not compliant with Rule 56.1); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."); *Curtis v. Costco Wholesale Corp.*, 807

---

[2] Also, under "introduction" and "Standard for Rule 56 Motion for Summary Judgment," Plaintiff merely adopts these sections of Menard's brief. (Dkt. 79-1 at 1.)

F.3d 215, 219 (7th Cir. 2015) (noting that the Seventh Circuit has "routinely upheld the district court's discretion in requiring parties to comply strictly with local rule requirements.").

The following facts, therefore, are taken from Menard's Statement of Facts and the record and are not disputed. On October 4, 2015, Plaintiff and her mother went to the Menards in Mount Prospect, Illinois, to shop for lava rock. (Def.'s SOF ¶ 1.) At Menards' entrance, there are automatic sliding doors ("entrance doors") which are triggered to slide when customers pass by a sensor on either side of the doors. (Def.'s SOF ¶ 2.) While exiting the store, Plaintiff claims that the sensor on the sliding panel of the doors did not register her presence and so she was struck on her left side. (Def.'s SOF ¶ 4, 5); (*see also* Dkt. 15 ¶ 8) ("It was unclear why the sensors did not 'see' Catalano and stop the doors from closing."). After she was struck, Plaintiff experienced difficulty seeing and pain on the left side of her body. (Dkt. 15 ¶ 9.)

The entrance doors have two parts, a stationary emergency breakaway panel and adjacent sliding panels with sensors. (Dkt. 83, Exhibit A p. 78.) There are two different types of sensors on both sides of the sliding panels which ensure that the doors properly open and close: (1) eagles – these are the activation or "motion only" sensors that make sure that the door opens (Andrew Gerard Christopher Dep. 39:1–16); and (2) beams – or "presence sensors" which hold the door open if an individual is standing in the door path (*Id.* 39:17-19).

One month before Plaintiff visited Menards, on September 8, 2015, there was a windstorm that blew open the emergency breakaway panel of Menards' entrance doors. (Richard Gerke Dep. 17:22-18:2.) Menards called its service technician, Nabco, and Nabco ultimately serviced the doors three times in September 2015. None of the visits or repairs related to issues with the doors' sensors on the sliding panels. (Def.'s SOF ¶ 11.) On each visit, the Nabco technician, Richard Gerke, checked and confirmed to Menards that the doors were

functioning appropriately – opening and closing when the sensor was activated. (Def.'s SOF ¶¶ 10, 12.) When Gerke first visited the store on September 8, 2015, he made emergency repairs to secure the emergency breakaway panel back to the door frame. Although the doors were functioning when he left that day, Gerke needed to come back to replace the hinge pivot, a part of the breakaway panel that does not pertain to the sliding door, that had been damaged by the wind. (Dkt. 84 at 3; Dkt. 79-2 at ¶ 4.) On September 18, 2015, when Gerke returned, he encountered issues fitting the new pivot and determined he would need to return with a different pivot. (Dkt. 79-2 at ¶ 5; Gerke Dep. 23:8-10.) Although the repair work regarding the pivot pertained to the stationary breakaway panel part of the door, Gerke made certain that the doors were function in properly when he left the store on September 18. (*Id.*) During his third visit on September 21, he installed the proper pivot, (Dkt. 79-2 at ¶ 5.), and also repaired a "ball detent" which "holds the door in place once it's in the closed position" – again a repair on the breakout panel (Dkt. 79-2 at ¶ 7). In the September 21, 2015 report, Gerke specifically noted, "all functions and safety check OK." (Def.'s SOF ¶ 14.)

Menards also called Nabco technicians to the store for a new issue a few weeks *after* the incident. On October 23, 2015, Menards called Gerke because although the doors were working they were "not rolling smoothly." Gerke determined that a carriage assembly needed work but he did not have the correct part to make the repair with him. (Gerke Dep. 31:3-5.) On October 26, 2015, when Christopher returned to the store to finish the repair, Christopher checked both sides of the doors and found that the sensors worked. (Christopher Dep. 40:22-41:2.) In order to check the sensors, Christopher walked up to the door "from 45 degree angles from the sides dead on and do the same thing on both sides." (Christopher Dep. 11:1-12:15.); (*see also* Gerke Dep. 25:16-22).

4

In summary, neither Nabco technician ever reported any issues with the sensors when they left the store each time in 2015 both prior to and after the incident.[3] (Dkt. 84 at 4; Dkt. 79-7 at 37-45.) There is no evidence in the record that supports that the windstorm impacted either the sliding panels of the entrance or the sensors on those panels.[4] Menards never received any complaints regarding their entrance doors before or after Plaintiff's October 4th visit nor were there any incidents involving the doors. (Def.'s SOF ¶ 7.) Menards' managers Jacob Frosch and Charles Leveritte gave deposition testimony that they had never received any complaints from customers or other employees, nor had they themselves witnessed the doors fail to open and close as intended. (Def.'s SOF ¶ 8, 9.) Nabco's reports and invoices from 2013 to 2016 also show no problems with the automatic doors' sensors. (Def.'s SOF ¶ 10.)

*Plaintiff's Additional Facts*

Even if the Court were to consider Plaintiff's additional facts, they would be of no consequence to the decision. First, Plaintiff attempts to create a fact dispute by alleging that not all of the assistant store managers were deposed and as such she claims the two managers who were deposed are insufficient. (Dkt. 79-2 ¶1.) Plaintiff, however, could have deposed any additional Menard employees or agents if she wanted and chose not to do so. (Dkt. 84 at 1.) Suggesting that two is not enough does not create a fact dispute. Conclusory opinions and suspicions are inadmissible in summary judgment proceedings to the same extent that they are inadmissible at trial. *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 497 (7th Cir. 2010). Also in response, Plaintiff attempts to create a fact dispute by alleging that she only received documents relating to service calls for the doors in September 2015. Yet, Plaintiff attached exhibits to her

---

[3] Menard actually says 2005, but this is presumably a typo.
[4] There is evidence that in 2016, there were updates to the eagle sensors. (Christopher Dep. 58:3-5.) The upgraded eagles were not available in 2015. (*Id*. 58:6-9). Nevertheless, there is no evidence that these updates were necessitated by any sort of defect and none of the invoices from 2015 show that there were any issues with the eagles or the beams. (*See* Dkt. 79-4 at 40-43.)

5

opposition to summary judgment showing service calls on April 24, 2015 and May 13, 2015. (Dkt. 79-4 at 47.) Attaching exhibits that contradict her own argument belies her discovery allegation and does not explain why she never asked any questions about these visits during Christopher and Gerke's depositions. Regardless, nothing in those exhibits creates a fact dispute about the repairs to the doors since neither pertained to the sensors and the moveable doors.

Plaintiff attempts to show negligence on the part of Menards due to the fact that Menards allegedly did not have a regular six month maintenance schedule. (Dkt. 79-2 ¶ 8.) According to Nabco technician Christopher, Nabco recommends service on electronic doors every six months. (*Id.*) (citing Christopher Dep. 20:13-21:19.) Menards disputes that this was the recommended maintenance schedule and disputes that they were ever told about such a recommendation. (Dkt. 84 ¶ 8.) No document supports Christopher's assertion; but even if the Court were to treat his statement as factually true, it is of no import because Menards had in fact had the doors serviced during the six months prior to the incident. In both April and May 2015, Nabco serviced the doors. (Dkt. 79-4 at 47.) Plaintiff's counsel chose not to inquire about those service calls during depositions. This service was above and beyond the service in September 2015 during which the Nabco technician made certain that the doors were working properly. (Dkt. 84 at 4.)

Finally, Plaintiff asserts that Gerke once described the sensors as "Eagle,Beam" in his September 8 report and then in the reports on September 18 and 21 as "I-One." Plaintiff further asserts that the sensors on the inside of the door were different from the outside of the door. (72-9 ¶ 11.) Nowhere does Plaintiff explain the significance of the distinction in its memorandum of law or otherwise, and Menards further states that the technician found *all* sensors working on the three September visits. (Dkt. 84 at 4.) Even if Plaintiff had complied with the local rules, these additional facts would not change the decision.

## II. The Standard of Review

Summary judgment is appropriate where the admissible evidence shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A 'material fact' is one identified by the substantive law as affecting the outcome of the suit." *Bunn v. Khoury Enters., Inc.,* 753 F.3d 676, 681 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A 'genuine issue' exists with respect to any such material fact, and summary judgment is therefore inappropriate, when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 681–82 (citing *Anderson,* 477 U.S. at 248). On the other hand, "where the factual record taken as a whole could *not* lead a rational trier of fact to find for the nonmoving party, there is nothing for a jury to do." *Bunn,* 753 F.3d at 682 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (emphasis in original)). In determining whether a genuine issue of material fact exists, the Court construes the evidence and all inferences that reasonably can be drawn in the light most favorable to the nonmoving party. *See id.* at 682 (citing *Anderson,* 477 U.S. at 255); *see also Kvapil v. Chippewa County, Wis.,* 752 F.3d 708, 712 (7th Cir. 2014).

## III. Discussion

There are no disputed issues of material fact requiring the case to go to a jury. First, with regard to the premises liability claim, there are no facts to support that Menards had any knowledge of an unreasonable risk of harm. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). Second, with regard to the negligence claim, there are no facts that Menards breached a duty of care because the injury here was not foreseeable to Menards. *See Cunis v. Brennan*, 56 Ill.2d 372, 376 (1974). Finally, there are not facts to support that Plaintiff's *res ipsa loquitur* claim should prevail because Plaintiff's injury is not the type of

injury unlikely to occur without negligence and the doors were not in Menards' exclusive control. *Britton v. University of Chicago Hospitals*, 382 Ill.App.3d 1009, 1010-11 (2008) (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill.2d 90,131 (1992)).

### A. Premises Liability

"Under Illinois law, property owners owe to their invitees a duty to maintain the premises in a reasonably safe condition." *Parker*, 845 F.3d at 811 (citing *Ward v. K Mart Corp.*, 136 Ill.2d 132, 143 (1990)). To recover in a premises-liability case, a plaintiff must prove that: (1) there was a condition on the property that presented an unreasonable risk of harm; (2) defendants knew, or in the exercise or ordinary care should have known, that the condition of the property involved an unreasonable risk of harm; (3) defendants should have anticipated that persons on the premises would not discover or realize the danger or would otherwise fail to protect themselves against it; (4) defendants performed some negligent act or omission; (5) plaintiff was injured; and (6) the condition of the property was a proximate cause of the injury to plaintiff. *Jordan v. Nat'l Steel Corp.*, 183 Ill.2d 448, 454 (1998); *see also* Illinois Pattern Jury Instructions, Civil, No. 120.08 (2005).[5] Constructive or actual knowledge is a fundamental element of a premises liability claim. *Mueller v. Phar-Mor, Inc.*, 336 Ill. App.3d 659, 665 (Ill. 2d. 2000); *see also Jordan*, 183 Ill. at 457-458 (the Illinois Supreme Court analyzed whether defendant had notice under the second element of the six-part test).

---

[5] Illinois courts also analyze premises liability under Section 343 of the Restatement. Under that section, a defendant is liable if the possessor of land "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *See Genaust v. Ill. Power Co.*, 62 Ill.2d 456, 468 (1976) (quoting Restatement (Second) of Torts (1965)). There is no meaningful distinction between Section 343 from those six factors cited in other Illinois cases for purposes of this analysis.

Plaintiff asserts that Menards is liable for premises liability because "management took no action to prevent the customers from being harmed – no thorough inspection of the door, no replacement of the door, no added warnings to those of the manufacturer on or around the door which might have notified the customers of the increased risk." (Dkt. 79-1 at 5.) After months of fact discovery, however, Plaintiff's claims are not supported by the facts. First, there is no evidence of a condition on the property that caused an unreasonable risk of harm. Although Plaintiff attempts to conflate the condition issue by alleging that the windstorm caused some damage to the emergency breakaway panel, and therefore Menards was put on notice of a condition that would cause harm, nothing in the record supports such a conclusion. In fact, Plaintiff's own theory of liability is that the sensors that open and close the doors failed and therefore her injury was proximately caused from the failed sensors that did not open the doors. By simply alleging that the breakaway panels had been serviced due to wind damage fails to link the breakaway panels with the sensors and the moving part of the doors. There is no evidence in the record at all that the breakaway panels somehow impacted an entirely different panel of the door, the sensors, or the functioning of the entrance doors. Even if the Court were to credit Plaintiff's improper statement of additional facts, which are not admitted, in which she claims that there was not a "thorough inspection of the door," the evidence negates the assertion. The record shows that Nabco visited to inspect the doors in April and May of 2015 and nothing indicates that these were not thorough inspections. (*See* Dkt. 79-4 at 47.) Plaintiff also does not even bother to speculate, let alone set forth evidence, as to how Menards could have prevented her injury through "added warnings." (Dkt. 79-1 at 5.)

Most importantly, Plaintiff fails to show that Menards knew or could have known of a dangerous condition. There had been no complaints, reports, and no employee had seen any

9

malfunctioning of the automatic doors. And even though Plaintiff's allegations concern specifically the sensors in the side panels, Menards also had no reason to believe that the condition of the breakaway panel posed any danger because Nabco made temporary fixes and determined the doors were functioning after leaving Menards upon each site visit and the breakaway panels were fully repaired by September 21, a few weeks before Plaintiff arrived at Menards. Again, however, there is nothing in the record to show that the breakaway panels had anything to do with the proper functioning of the doors that were opened by the sensors. Therefore, rather than notice of a dangerous condition, Menards had the opposite: affirmative confirmation from its service technician that the doors were properly functioning and that all safety checks had been made just two weeks prior to the incident. (*See* September 21, 2015 Nabco Service Report at Dkt. 79-7 at 30) ("ALL FUNCTIONS AND SAFETY CHECK OK[.]") (emphasis in original).

Not only does Plaintiff not have the evidence to oppose Menards' Motion, she also does not provide any sort of analysis of relevant case law to demonstrate that other courts applying Illinois law would find an issue for the trier of fact under similar circumstances. Based on the Court's own review, the cases support judgment for Menards. For example, in *Mueller v. Phar-Mor, Inc.*, the plaintiff had a similar injury resulting from sliding doors at a retail store and an Illinois Appellate Court affirmed the trial court's grant of defendant's motion for a directed verdict on the issue of premises liability. In *Mueller*, the relevant sliding doors consisted of two automatic glass doors and two adjacent glass side panels which were stationary and only to be opened in the case of emergencies. Although there was no emergency, at the time the plaintiff entered the store one of the side panels had been removed. 336 Ill. App.3d at 663-664. When the plaintiff attempted to pass through, the sliding doors activated and struck her in the right side,

pushed her into the side panel, and then struck her again. *Id.* at 662. Similar to the facts in this case, just prior to the incident, the store had called a service technician. *Id.* at 664-665. The technician confirmed the doors were working and there was no evidence any of the store employees had seen a similar incident occur, no past reports from customers, and no evidence that the store had done anything to ignore prior notice because they never received prior notice. *Id.* Although the store knew that the sliding panel had been removed, the store had no knowledge that this would be a condition to trigger the automatic doors to strike a person walking through the entrance; therefore, there was no triable issue of fact on the premises liability claim. Just as the store in *Mueller* had no reason to anticipate that the absence of the side panel would trigger a problem with the automatic doors, Menards had no reason to anticipate that the damage from the windstorm to the emergency breakaway panel would impact the automatic doors.

In contrast, in *Parker v. Four Seasons*, a hotel was liable under a theory of premises liability because there was a clear record that the hotel was on notice of a defect in the sliding glass doors of the showers in the hotel rooms; the plaintiff, a hotel guest, slid the sliding glass door of the shower when it "exploded suddenly, raining shards of glass to her naked body and causing injuries." 845 F.3d 807, 810 (7th Cir. 2017). At summary judgment, the hotel guest submitted an affidavit stating that the engineer employed by the hotel told her that the hotel had recently undergone renovations and "that a 'bunch' of the newly installed sliding glass doors had exploded because the overhead track stoppers were not working properly." *Id.* at 810. The hotel guest also uncovered an email suggesting that several doors had broken in a similar manner and that the glass door in her very room had previously exploded and been replaced. *Id.* Despite being on a "do not sell list" the hotel room was rented to the guest anyway. *Id.* In *Parker*, a

factfinder could infer that the hotel was aware that there was a problem that could cause injuries, the problem had not been fixed, but the hotel still rented the room to the guest. Plaintiff has not presented any analogous facts showing that Menards was on notice of a condition relating to the automatic doors that could cause an injury to its customers and therefore summary judgment is granted on that count.

## B. Negligence

"The necessary elements of proof in a cause of action for negligence are: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach." *Mueller*, 336 Ill. App. 3d at 667 (quoting *Arroyo v. Chicago Transit Authority,* 268 Ill.App.3d 317, 325 (1994))[6].

Plaintiff argues that Menards had a duty of care that it breached based on the following factors: (1) the foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden on the defendant of guarding against the injury; and (4) the consequences of placing the burden on the defendant. *Deibert v. Bauer Brothers Construction Co.*, 141 Ill.2d 430 (1990 141 Ill.2d 430 (1990).). Plaintiff claims that the injury here was foreseeable because if electronic doors fail and "hit a customer," an injury will result. (Dkt. 79-1 at 3.) However, this is the wrong inquiry. It is not disputed that if a door fails and "hits" a customer, an injury may result. Instead, the question is "[n]ot what actually happened, but what the reasonably prudent person would then have foreseen as likely to happen[.]" *Cunis*, 56 Ill.2d at 376 (quoting Restatement (Second of Torts (1965).). Put another way, it's not what would happen if the door hits a person; instead, it is whether it was reasonably foreseeable that the door would hit a person in the first place. Given the reports from Nabco that the doors were functioning properly and that there

---

[6] Plaintiff incorrectly cites to the Section 343 factors which are relevant to her premises liability argument, not her simple negligence argument. *See* Dkt. 80 at ¶6 (quoting *Deibert v. Bauer Brothers Construction Co.*, 141 Ill.2d 430 (1990).).

were no prior complaints, the failure of the automatic door and resulting injury here was not reasonably foreseeable. Second, Plaintiff contends the windstorm made the injury likely, but Menards called its service technician as soon as the storm hit. Nabco never found any issues with the sensors after the storm and by September 21, 2015, even the breakaway panel, which had been damaged by the storm and was unrelated to the sensors, had been completely repaired. (Dkt. 79-7 at 30.) As to the third and fourth factors, Plaintiff concedes that "[t]he burden on Menards to prevent such an injury is not insignificant," because Menards had to pay Nabco, but Plaintiff further notes that this amount was small. (Dkt. 79-1.) In fact, there's no evidence to support a calculation of such a burden on Menards. Nabco technicians told Menards that the doors were fine prior to Plaintiff's visit. If their own vendor could not find an issue with the sensors, then it is unclear what lengths Menards should have taken and at what costs. Plaintiff eludes to the cost of a more "thorough inspection" of the doors, Dkt. 79-1 at 4, but there is no evidence that the inspections done by Menards were not sufficient. Applying these factors, Plaintiff has failed to show that Menards owed a duty of care.

In *Mueller*, the court expanded the negligence analysis and found that notice is *not* always necessary: "[w]here plaintiff has offered some slight additional evidence, either direct or circumstantial, from which a jury could infer that it was more likely that the defendant or its employees, rather than a customer, created the condition leading to the plaintiff's injury, the negligence issue may go to the jury without evidence showing defendant's knowledge or constructive notice of the condition." 336 Ill. App.3d at 669 (collecting cases). There was ultimately a finding of negligence because the store had removed the side panel which was to be done only when there was an emergency and there was no emergency; there was also evidence that the side panels had been found opened a number of times in the six months previous to the

13

incident on other non-emergency occasions. *Id*. Because the side panel was opened at times that the store knew it should not be, the court held that there was an issue of fact as to whether the plaintiff "created the condition leading to the plaintiff's injury." *Id.* Here there is no similar affirmative act by Menards that could be construed as creating the condition that led to Plaintiff's injury.

### C. Count III – Res Ipsa Loquitor

"The doctrine of *res ipsa loquitur* requires that (1) the occurrence is one that ordinarily does not occur in the absence of negligence; and (2) the defendant had exclusive control of the instrumentality that caused the injury." *Britton v. University of Chicago Hospitals*, 382 Ill.App.3d 1009, 1011 (2008) (citing *Dyback v. Weber*, 114 Ill.2d 232, 242 (1986)) (emphasis added). Therefore, if negligence is found, the assessment of *res ipsa* is not needed. It is a principle used primarily to find for a conclusion of negligence when evidence of such is wanting. *Mueller v. Phar-Mor, Inc.*, 336 Ill.App.3d 659, 670 (2000) (quoting *Metz v. Cent. Ill. Elec. & Gas Co.*, 32 Ill.2d 446, 448–49, 207 N.E.2d 305 (1965)) ("[The] purpose [of the doctrine of *res ipsa loquitur*] is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant."). Here, Plaintiff has not demonstrated Menards' negligence, so the Court now turns to the *res ipsa loquitur* analysis.

To support her theory that her injury was an occurrence that would not ordinarily happen absent negligence, Plaintiff cites to a New Jersey Supreme Court decision holding that "common knowledge will justify a *res ipsa* inference when automatic doors cause injury to blameless victims." *Jerista v. Murray*, 883 A.2d 350, 362-363 (N.J. 2005). Illinois has not weighed in on this inference in the context of automatic doors, but other courts are not persuaded by New

14

Jersey's analysis. In *Kmart Corp. v. Bassett*, the Alabama Supreme Court held that the theory amounts to an improper inference based on an inference and, even if there was a malfunction, "a mere malfunction would be insufficient to invoke the doctrine of *res ipsa*." 769 So.2d 282 (Ala. 2000). For example, "the malfunction could have occurred because the doors were defective or because the company that serviced the doors had been negligent." *Id*. The same is true here that Menards' service technician could have been negligent precluding a finding of *res ipsa.* Nabco repeatedly affirmed to Menards that the door was properly functioning, making it difficult to automatically infer that the injury was the result of Menards' negligence. There is no evidence, therefore, indicating an issue of fact as to the first prong of the *res ipsa* analysis.

Plaintiff contests that the second prong is required and asserts that she does not need to show Menards exercised exclusive control over the doors. Plaintiff relies on *Massa v. Michaels Stores, Inc.*, an unreported decision on a motion to dismiss, the Central District of Illinois, noted, in dicta, that exclusive control is not required, but the district court provided no further analysis on that point. 2013 WL 5951306, *2 (C.D. Ill. 2013). Unlike here, in *Massa* it was premature to assess the issue of control without the development of a factual record. Plaintiff also cites to *Aguirre v. Turner Const. Co.*, a case with extensive analysis quite helpful to the Court's decision here. 582 F.3d 808 (7th Cir. 2009). Although Plaintiff seems to rely on this case for the same proposition, that exclusivity is not a requirement for *res ipsa*, the court reviewed an extensive history of confused litigants wrestling with issues of control and ultimately held that the inference of *res ipsa* was not appropriate when the accident in which plaintiff was injured was possibly caused by a nonparty subcontractor, not attributable to any duty of the defendant employer of plaintiff. While the defendant employer assumed a duty to supervise measures taken by the subcontractors for the protection of their workers, the duty "did not require

continuous or repetitive inspections." *Id.* at 813. Similarly, here, Menards had a duty to ensure customer safety by maintaining the automatic doors, but Menards did so through its redundant safety system of sensors and by having its doors serviced by its technicians at Nabco. Just as there was evidence that a nonparty may have been negligent in *Aguirre* prohibiting an inference of *res ipsa*, there are nonparties who may have also contributed to Plaintiff's injury. Defendant's Motion for Summary Judgment, therefore, is granted on Plaintiff's claim for *res ipsa.*

## CONCLUSION

For the foregoing reasons, Defendant, Menards' Motion for Summary Judgment is granted on Plaintiff's claims of premises liability (Count II), negligence (Count I) and *res ipsa loquitur* (Count III).

Date: June 23, 2017